The next case is 120649, People v. Veach, Agenda No. 3. Counsel for appellant, are you ready? Okay, thank you. When you're ready. Mr. Luan, are you? Thank you. May it please the court. My name is Jack Hildebrand, and I am representing the defendant here, Mr. Blagy Veach. The claim here is that counsel was ineffective for stipulating to the admission of three recordings of the estate witnesses, Matthew Price, Johnny Price, and Renee Stroh. The state did not offer any reason why it was stipulating to the admission of these recordings, but defense counsel did. Defense counsel stated that he wanted to use the recordings for impeachment and stated that by doing so, he realized that he was opening the door to impeachment. And when it came time to admit the first recording, defense counsel said, hold on a minute here, does the whole thing have to come in? And the state said, well, yes, under the completeness doctrine, the jury has to see all of it. And defense counsel basically just acquiesced and said, well, okay, as long as I'm given an opportunity to rebut. I'm not sure what that means, but that's what he said. So to reach this issue on direct appeal, all the appellate court had to do was answer one question. Does the defendant's claim depend on any matters outside the record? And if it does, you can't address it, and if it doesn't, then you can. The majority ruled that they couldn't reach this issue because defense counsel did not state on the record why he was stipulating, and they weren't going to get into a guessing game. And because the appellate court believed that there could be a reason that would have justified the stipulation. And the problem with the appellate court's ruling is, number one, is defense counsel did state on the record why he was stipulating. And two, there is no possible explanation that would justify an attorney agreeing to the admission of these recordings. How could it ever be trial strategy to admit unfairly prejudicial statements against your own client, and in this case for the purported reason of impeachment, and then not even needing those recordings to impeach, and not even using those recordings to impeach? Because that's what happened in this case. You're not asking in this case for a rule that every case that brings up ineffective assistance to counsel on appeal needs to be addressed on appeal, is that correct? Correct. You're saying it's a case-by-case analysis? Absolutely. If there's sufficient evidence in the record that the appellate court ought to cite it, is that right? Correct. I mean, appellate courts make these kind of judgment calls all the time. They're very well situated to make these, just like in reasonable doubt or plain error, requires some kind of judgment call. And this is an easy one for an appellate court. Does it rely on matters outside the record or doesn't it? It's a pretty easy decision to make. How do you get around the other evidence that would arguably do away with any prejudice in this case? Didn't two witnesses testify to the defendant slitting the throats of the? Yes, right. Is that not enough in itself to defeat any prejudice if we get to the merits of this? Right. If their evidence was reliable and if it was clear and unimpeachable, then, of course, it would. But in this case, their evidence was entirely suspect. It was so suspect that defense counsel argued in closing that a reasonable explanation would be that Matthew was sitting there completely intoxicated and drugged up, contemplating going to prison in a couple of days, contemplating losing his girlfriend, Renee, to somebody else while he's in this sort of drug and alcohol condition. And his anger just cut Renee and then realized there's going to be serious consequences for that and cut himself. That sounds absolutely crazy. But it was covered in blood and that blood turned out to be a combination of Matthew's and Renee's, right? Yes. Yes. And that was totally consistent with what the defendant claimed to happen. I mean, there's nobody that's denying that Matthew is over him, punching him, so his blood is going to be there. Renee, according to the defendants, Renee pushed Matthew off of the defendants, so her blood could be on him. According to Johnny, he says that the defendant pushed Renee after she had been cut so that he has blood on him, droplets of blood, is consistent with his defense that he did not do that. So that really doesn't prove that so convincingly that we would, that the state could reasonably argue that the evidence is overwhelming. In this case, I think you're indicating you're relying on counsel's statement that he thought he had to let, that he'd opened up the matter and everything had to come in and that was the clear error. If he had said nothing, where are you? Does it make a difference? Should we go beyond the record if it's speculation would favor the defendant or whether it favors the state? I think this is one of those unusual cases where it doesn't really even matter what defense counsel said. If he said nothing, we'd be in the same position because no reasonable attorney would ever admit unfairly prejudicial evidence against his own client for no reason because he didn't understand the rules of evidence. So it doesn't really matter what he would say. There is no reasonable trial strategy in doing that. So whatever he says doesn't really matter. But, in fact, he did say something. And what he did say was he showed us he didn't know how to impeach a witness. He didn't know that he had an obligation to redact everything out of those statements except for the parts that he wanted to use for impeachment. He didn't know that. And then when the state said, well, you know, the completeness doctrine requires the jury to see it all, he didn't know that the completeness doctrine didn't allow the state to bring in any of that evidence. It's just he didn't know. That's what that shows. We often say that, you know, we'll defer to matters of counsel and trial strategy. Yes. Is that statement, does that always favor the state in cases where there's an allegation of ineffective assistance? I wouldn't say always, but it certainly tends to because that's the first assumption that we're going to look at. But if the record shows that that was not trial strategy, especially if counsel states on the record, well, I'm doing this because of that and it's totally wrong, well, that's a pretty easy one. And that's what happened in this case. I mean, we do have that. But to say that this was somehow trial strategy, there is nothing to support that. No reasonable attorney would have done this under any circumstances. It's like counsel, basically what counsel is saying is, I am going to allow in evidence that is going to deny the defendant a fair trial because I want to impeach some of the witnesses. And he ended up only really using the recordings twice with Matthew Price. He said, well, Matthew, didn't you refer to yourself as a criminal on the recording? And Matthew's like, I don't remember that. I don't know. So he plays a little snippet of him allegedly saying, you know, referring to himself as a criminal. I'm like, who cares? The jury already knew he's a criminal. He talked about going to prison, about going to jail. Numerous witnesses came in and testified about Matthew holding knives to people's throats, pointing guns at people, threatening to kill people. Who cares about that? The only thing he really used to impeach was he asked Matthew, did you hear Johnny snoring right before this happened? And he said, I don't remember saying that. Did you tell the police? Don't remember. So he played the little snippet about the snoring. So that was good. So basically he let in three entire recordings just so he could ask Matthew, did you hear Johnny snoring? I mean, that's what it really boils down to. I mean, all the other impeachment, basically the witnesses said, yeah, I remember saying that. So he didn't even need the recording for that. They were admitting they said it. So you're right. If the evidence in a case is overwhelming against the defendant, then an ineffective assistance of counsel claim is going to fail. So we have to really talk about the evidence, too. So, like I just said, that the argument that the defense counsel made in closing argument sounds pretty fantastic. Well, it is until you look at the behavior of Matthew Price, and then that crazy scenario becomes reasonable. It actually could have happened in this case because of Matthew's conduct and his character shows that, yes, that is a reasonable explanation. I mean, before this incident happened, Matthew had threatened Renee with a knife numerous times. He had threatened to hurt himself with a knife also. And he threatened to kill Renee. This is all before. And he accused Renee of having affairs with other men, including the defendant. And by his own testimony, Matthew said he thought about killing himself numerous times, well, several times before this happened, over the thought of losing Renee to another man. So there we have Matthew completely drugged up, totally intoxicated, just sitting there thinking about going to prison in a couple of days, losing Renee to somebody while he's in prison. And so we have to look at, let's just take Renee first. Who would cut Renee? Matthew, who had been threatening to kill her and cut her, or the defendant, who had a history of protecting Renee, of being her friend, of helping her. And according to Renee, the defendant never threatened her or harmed her her entire life. So who would cut Renee? Matthew or defendant? And the state is saying overwhelming evidence, it's the defendant. Well, that is just not consistent with the evidence. It's not overwhelming that he would do that. And what about Johnny, too? I mean, his testimony was no better than Matthew's. His character was no better. He says, well, I saw the defendant do this thing, and then he runs out of the house, and he doesn't call the police. He says, well, I was scared to call the police. Why wouldn't he call the police? He calls his grandmother, and then he gets to this Dairy Queen, and the manager goes, I'll call the police for you, because he says, oh, I just saw somebody's neck get cut. And he says, no, no, no, no, don't want that. And then this manager hears Johnny laughing on the phone and decides to call the police, because that's totally weird for her. So what does that say about Johnny? I mean, that kind of conduct is not consistent with what he testified to. So you have two people accusing defendant, Johnny and Matthew, who that's the state's case. They're the ones saying that defendant did that, and they're totally unbelievable. And they have motives themselves. Johnny had a motive that night to hurt them, because Renee and this Matthew guy stole his drugs, and he was upset about it. So there's somebody with actually a plausible motive to do something, where defendant had no motive. If we conclude that the record is sufficient for review of this issue, is judicial economy the only reason why we should decide it or should we remand it to the appellate court? Well, judicial economy, and we briefed the cases. We're here, and this court is going to have to make some determination in the case. So might as well do it. I have no desire to ask this court to remand it back, as long as we're here, and we briefed it and argued it. I think that since this court's going to be having to make a determination on part of the issue anyway, and maybe even, you know, it could be a difficult issue, because it will take time to look at the evidence and see, is this the type of case that can be reviewed, and make a judgment on that, might as well make a judgment on the case. You refute the evidence, counsel, but, I mean, we're looking at something a little bit different than that, right? And you're saying it's not overwhelming, but your argument has to be that sans the stipulations, that there's a reasonable probability that the jury would have gone the other way, right? Oh, yes. Absolutely. Yes. Okay. Can you kind of talk a little bit about the interplay of that? Sure. I mean, sure. Okay. Go ahead. Yeah. The reason that we don't allow this evidence in, prior consistent statements, and bad-ass evidence, is because it produces unfair trials with results that we can't rely on. I mean, that's exactly why we keep them out. And here they came in. This was a close case. I mean, how often do you see a case where the jury sends a note to the judge saying, we are at a deadlock here, with no end in sight? That's because this was a close case. If you took all that evidence out, you basically would be taking away the state's closing argument, the strongest part of their closing argument, because without this evidence, there is no evidence that defendant had a violent history. There's no history of violence for the defendant, only because these statements came in that were not reliable to begin with, and totally inadmissible. That's how they were able to argue that. And what the evidence showed is that defendant didn't have this history of violence. So if you remove all of that evidence that came in, half of the prosecution's case is gone. I mean, if they argue in closing that defendant has a history of violence, and then you look at another part of their argument, where they said, the prosecution said, we don't know why defendant did this. There is no motive here for defendant. But we don't have to prove motive. So you take those two arguments. He's got a history of violence. He's got no motive. What does that leave the jury with? That's propensity. That's why we don't allow that type of evidence in. That's propensity. That's a propensity argument. So without all of this evidence coming in, first, they don't get repeatedly told about this incident, which influences a jury to give credibility to the statement that's repeated often. And it's repeated by the two witnesses that were totally impeached, Johnny and Matthew. And that's the state's case. Johnny and Matthew is the state's case. So without this evidence, there's a reasonable probability that this would have ended up with a different verdict. I mean, at one point, they were set to have a mistrial here because the jury was hung. So to say that this evidence didn't play any role and that the evidence was overwhelming is just totally inconsistent with everything that happened at this trial. And, of course, Matthew had a motive to do it, and so did Johnny. And their explanations of what happened were not believable. I mean, Johnny says, oh, all of this happened because the defendant wanted to beat me up, and Matthew said, you have to go through me. Well, they interviewed Johnny first when he said that. So when Matthew came in, the police asked Matthew, was there a problem with Johnny and the defendant that night? He said, no. And then Renee comes in and goes, was there a problem with Johnny and Matthew that night? No. So I'll finish up here. So his entire claim of why all this happened was totally contradicted by the other two witnesses who didn't know the same story. So to say that this evidence is overwhelming just doesn't match up with the evidence that was presented. Thank you. Thank you, Mr. Hildebrand. Mr. Lewin. Good morning, Your Honors. May it please the Court. Counsel. Assistant Attorney General Daniel Lewin for the people. We agree that this case can and should be resolved on direct appeal, but that's because the record is sufficient to show that the defendant did not suffer prejudice and that his counsel performed adequately. That's both because the State's case against the defendant, even setting aside the now-challenged statements, was so overwhelming that there's no reasonable probability of a different outcome had the jury not heard the statements, but also because the statements themselves were on balance favorable to the defense at trial and therefore not prejudicial and stipulated to as part of a reasonable trial strategy. So we therefore ask that this Court affirm on the merits. And to address the merits of an ineffectiveness claim, as this Court has repeatedly recognized, such a claim can be rejected on the prejudice prong alone, and we think that's an appropriate place to start. And we think this Court's baseline for the prejudice analysis, as counsel discussed, is to look at what the State's case against the defendant would look like if these statements were out of the picture entirely. And that paints a pretty inculpatory picture of the defendant. So we can start with the forensic evidence. When the defendant was arrested, he was speckled in the victim's blood, literally head to toe, he had the victim's blood all over him. When he was taken in to speak to the police and asked why he had blood all over him, his first response was, I don't. When pressed on that, he said that the blood was his own. And the forensic evidence showed that that was a lie to the police. When asked what happened that night, he first said, nothing happened. When pressed on that, he concocted a story that he later disavowed on the stand about his local rivals, the Joneses, bursting into the house with guns to try to attack them. That was also a lie to the police. So even setting aside the eyewitnesses, what we have is forensic evidence showing that the defendant has blood on them and defendant lying about it to the police. And that begins to paint an extremely inculpatory picture against the defendant. Then you add to that that everyone in the room that night has something to say on the stand that inculpates the defendant even further. Johnny says, I watched the defendant cut Matthew's throat. Then I watched the defendant cut Renee's throat. Matthew says, I felt the defendant cut my throat. Then I watched him cut Renee's throat. Renee says, I didn't see who did it to me. She was either asleep or incapacitated. But she corroborated the positioning. She puts the defendant behind the love seat, which is where the attacks took place moments before the attacks. And she says, after the attacks, the defendant urged her not to call 911. And speaking of the 911 call, there's no dispute that the 911 call itself was admissible. And Matthew's portion of it was admissible as substantive evidence, which means that when the emergency operator asked Matthew, who did this to him, and he says, Blackie Veatch, that was also part of the state's case. That is an overwhelming picture of defendant's guilt. And the jury would have been left to balance that against defendant's alternative theories that Matthew did this to himself or that Johnny did it. But those suffer from fatal flaws totally independent of the prior recordings, not least of which is that they all turn on the defendant's account that he innocently emerged from the bathroom to find that the attacks were already completed by the time he was out. That had several problems, one of which is that, obviously, he lied to the police beforehand, so it was inconsistent with his first account to the police when he was first picked up. Had he been innocently sitting in the bathroom, he might have told them that. But also because he acknowledged he was about ten feet away from the fracas when he was in the bathroom, but said he didn't hear anything. He didn't hear Matthew screaming, didn't hear Renee screaming, didn't hear the couch being moved. So to believe that Matthew and Johnny had anything to do with the attacks, we would have to believe defendant's account that he was in the bathroom at the time, and that was not believable. And there are also problems with the theory. There are also evidentiary problems with these theories, including the inherent improbability of Matthew doing this to himself, the lack of forensic evidence suggesting that Johnny had done this. For instance, you can watch Johnny's video. It's People's Exhibit 24. He doesn't have blood on him. There's no forensic evidence to suggest that. Is it your position that no part of these statements were objectionable or inadmissible? We believe that there is one objection counsel could have made that might have been sustained, and that was to Renee's statement that his mother told me that he gets violent sometimes when he's drunk. And I'll return to that in a moment. But the rest of it, we believe, in terms of whether they're prior consistent statements, when you actually drill down to the details of the statements themselves, they're actually prior inconsistent statements, because whatever broad consistencies about defendant was there or we were all in the room, the key details of how the attack transpired were materially inconsistent with the live testimony. So we don't think that that was objectionable. The only other acts evidence is that alcohol statement, and we don't think that that was prejudicial. So when you look at a case like Harris, for instance, this court has explained that other acts evidence is not going to be prejudicial, where it's isolated and cryptic, and where the balance of the state's case against the defendant is overwhelming. And we think that that accurately describes what happened in this case. All three of these recorded statements came in as substantive evidence, correct, as part of the state's case? Correct, Your Honor. So they were not introduced as impeachment. They were introduced to what? Corroborate the witnesses on the stand? What was the purpose of this substantive evidence being admitted here? So they were introduced by stipulation of the parties. And I think sort of a tick-tock of what happened for the introduction of the evidence will help explain. The prosecutor comes on and says, I think we have a stipulation as to Johnny's statement. So the prosecution knows before they try to introduce the evidence that defense counsel is going to agree to it, suggesting on the record that defense counsel had previously agreed. Defense counsel then explains, we were going to open the door with impeachment, again suggesting that defense counsel wanted to use it for impeachment. But first the court says, now that's going to be admitted as substantive evidence. Yes. So the court's making really clear this is not about impeachment. This evidence is coming in as substantive evidence, correct? Correct, the full statement. But counsel then explains, we were going to open the door with impeachment. So Rule 106 now requires that the completeness doctrine requires the introduction of the rest of the statement contemporaneously. And I think the parties agreed that rather than defense counsel introducing the vast swaths of the statements. So you're saying it was all admissible under Rule 103? 106, my apologies, Your Honor. 106, okay. So I would say impeachment. It would be admissible substantively as a prior inconsistent statement under 801D. Had counsel, I apologize, Your Honor. I'm confused. Sure. So it's coming in substantively. Yes. By the State, and you're saying the State was introducing it as inconsistent statements? Defense counsel would have introduced it substantively as inconsistent statements. No, no, I'm asking why the State introduced it. This is the State's case. It is. The State is introducing these audio and video tapes as substantive evidence in the State's case for what purpose? Their purpose is to introduce those portions of the statement that defense counsel wasn't going to introduce. Oh, you're going to introduce the entire thing. They did, Your Honor. But what would have happened, so supposing there wasn't this stipulation. Would the State have, okay. My apologies. Supposing there wasn't this stipulation, defense counsel would have introduced most of the tapes as prior inconsistent statements. In their case. In their case, under Rule 801D, and that would have made it substantive evidence as well. Impeachment? Impeachment would have been substantive evidence? Under 801D, it wouldn't have been, obviously, in the State's case, but it would have been, the jury would have been able to consider it substantively under 801 if it's inconsistent, accurately recorded, and made with personal knowledge. If those three conditions are satisfied, which they were here, defendant would have been able to introduce it substantively, so the jury could consider it substantively as evidence. And none of that, of course, was discussed here. Correct. There's no limited instruction of the jury, so the jury could figure out the difference between substantive evidence and impeachment. There was not. Although it is discussed at the end of the case. The court thanks counsel, both defense counsel and the prosecutor, for entering into stipulations that were time-saving that allowed this case to progress forward. It was about almost a week-long case. So we believe that these pieces in the record on pages 33 and 34 show that the parties had discussed beforehand how they wanted to deal with this evidence. Defendant explains that he wanted to use it for impeachment, and he actually cites the Rule 801 evidence. It's transcribed as him saying 801B. Perhaps he meant 801D. But defense counsel explains, I want this evidence, and they enter into a stipulation. We think that that colloquy, combined with the repeated use by defense counsel of these statements in cross-examination and in his closing argument, is enough to show that defense counsel wanted broad swaths of these statements to come in for his case in chief, and they simply agreed to enter it all in at the same time in the state's case in chief. And when we look at the way the record plays out, we see that these statements were actually materially inconsistent in key respects from the witness's live testimony. So defense counsel's argument for why they constitute consistent statements is essentially they repeated details. But that obscures the details themselves, which differ from the live testimony on key points. So for Johnny's statement, for instance, Johnny says on the stand, I watched the defendant do it to Matthew. I watched the defendant do it to Renee. But in his statement, he says, I never saw the defendant cut Renee's throat. And he changes his story about whether he saw a defendant cut Matthew's throat. First he says, I heard Matthew shout. That caused me to look up, and the cutting was already complete by that point. Then he changes his story, and it becomes, I looked up partway through the cutting. So when we say that details were repeated, that's a critical distinction between the live testimony, which is the most inculpatory version that Johnny gives, versus the recorded statement, which is much less inculpatory towards the defendant. There are a host of other inconsistencies in the statement. Johnny says that the defendant is playing with a bat earlier in the night, which obviously was not the attempted murder weapon. In the live testimony, there's testimony that the defendant was playing with a knife. These are a sampling of the inconsistencies in Johnny's statement. Matthew's statement also contains inconsistencies. We think the most important inconsistency is the one by omission, where Matthew said on the stand, defendant pulled me aside moments before the attack to say that he had a hit on Renee as retribution for a prior incident. And Matthew made no mention of that in his recorded statement. And defense counsel, I think, effectively used that statement to great effect in cross-examination and in closing argument to say that maybe Matthew was making up the motive evidence on the stand. That makes this statement, in its entirety, favorable to the defense. There are other inconsistencies that Matthew makes about how he reacted to being attacked. On the stand, he says he ducked and spun, and that's how he saw defendant cut Renee. In the recorded statement, he says he jumped up right away. So these are the sorts of inconsistencies that if you actually drill down to the content of the statements, you can see that they're favorable to the defense, and that defendant would have been able to admit them substantively under Rule 801D, and the state would have been able, because defense counsel was using so much of these statements, would have been able to get in the balance under the Completeness Doctrine. So we don't think that there is prejudice, especially when you consider the interplay between the balance of the state's evidence and these statements themselves. Without the statements, defendant is left with all of the eyewitnesses saying that the defendant did it, the forensic evidence showing that he's covered in their blood, and defendant denying it on the account, in his account to the police. And what these statements do is allow defense counsel to sort of muddy up the eyewitness statements, as even appellate counsel does here. He uses Johnny's version of the events, Johnny's motive theory that he provides in the events, to say that Johnny wasn't credible. So if you take out the statements in which Johnny tells Detective Blag that this attack took place because Matthew interposed himself in a dispute between defendant and Johnny, that evidence is out altogether, and defense counsel at trial and even here on appeal can't say, well, Johnny isn't credible because he made up a motive theory. That's exactly what defense counsel was trying to do with this type of evidence at trial, to say, look, Johnny had inconsistencies between his trial testimony. He also comes up with this cockamamie theory in his prior statement. Maybe you can't believe a word that he's saying. So ultimately, what are described now as prior consistent statements, were actually prior inconsistent statements, would have been admissible substantively for the defense and therefore not prejudicial to his case. He also raises an other acts challenge to some of these statements. Most of what he describes as other acts can be rejected out of hand, either as not inadmissible evidence under Rule 404 or as not prejudicial to the case. Things like whether the defendant wanted to have sex with a woman named Lizzie, whether he had court the following day, even the dissent below acknowledges that that wasn't prejudicial to the defendant's case or that defense counsel wouldn't have had a successful objection to those pieces of evidence. As we've discussed, perhaps there was a meritorious objection to the alcohol evidence. However, what defendant characterizes as the prosecutor, quote, referencing this evidence in closing argument, really isn't. He cites the page, I believe it's 1248, in closing argument, and in context what the prosecutor is saying is that defendant Matthew and Renee are all violent and unlikable people, and then he says, but I submit to you that whether they are likable or not is not at issue in this case. So that's not a reference to the ten seconds of Renee's statement in which she makes this alcohol violence link. There's no reference to alcohol and violence there. The prosecutor does say at one point that alcohol and anger are a bad mix, but again that's not a reference to this sort of propensity argument that appellate counsel now says that the prosecution was making. And in any event, the reference was isolated and cryptic like the Harris case. Renee immediately caveats it by saying, I've interacted with defendant a lot, but I've never seen him get violent when he's drunk, and it wasn't referenced again. So ultimately we don't think that this single remark, the ten seconds of recording, introduced on the second day of a six-day trial, was enough to swing the balance in this case where there was so much other evidence against the defendant. How should we deal with a note from the jury that they're hung, the judge giving a prim instruction, and then three more hours of deliberation before a guilty verdict? We don't think that that's evidence that this case is actually closely balanced. And I think the thing to think about is that the jury are lay people, and so when they say that they're hung but then asked to continue deliberating the next day, what they're actually trying to say – Is it the next day or that night? No, they ask to come back the next day. They say we are hung with no end in sight. Can we please come back tomorrow to continue deliberating? And what does the judge say? The judge says continue deliberating tonight. But they deliver three more hours into the night. They do. But the point being, when they send that note, what they're saying is we're tired and we want to go home. They're not saying it's impossible for us to decide this case, and you can tell because they ask to come back the following day. So when the judge orders them to continue deliberating, and it takes them another three hours for a total of – we're not certain from the record, but it looks like six or seven hours corresponding to a nearly week-long trial. We don't think that that's evidence that the jury is deadlocked. We think that that's evidence that the jury was tired and couldn't resolve. It also came immediately after the jury requested and then was played the 911 call. So it was ultimately that the jury couldn't resolve whatever outstanding issues they had from listening to the 911 call, wanted to go home, and the court ordered them to plow on, and they finished within a few hours. So ultimately, we think these statements weren't prejudicial. Counsel stipulated to them as part of a reasonable trial strategy. That brings this case sort of pretty close to this court's Graham opinion, in which the state's star witness had a prior statement. On the stand, the star witness says, I watched the defendant shoot the victims. But in a previous statement that defense counsel elicited, the witness said, I watched the defendant shoot into a room. In a vacuum, that might seem like unfavorable evidence. But when you actually drill down to the details and look in the context of the case, it's actually an inconsistent statement that shooting into a room is less inculpatory towards the defendant than watching him shoot the victims. And that's exactly what we're looking at here. So we think that this case can be resolved on this record in favor of the state. And I want to briefly touch on why we think that's the procedurally appropriate course. So we all agree about the general sort of architecture of how we consider ineffectiveness cases in the state of Illinois. Ordinary forfeiture rules apply to ineffectiveness claims. So some cases can and even must be raised on direct appeal. And we also agree that the Bew Doctrine exists and just doesn't apply in this case. That in certain circumstances, the court can decide in its discretion that some cases are better held over for post-conviction review if they would benefit from further record expansion. And the parties agree that there's no more record expansion needed here. We think that the record is littered with evidence that defense counsel wanted to use most of these statements as impeachment. That's why he cites them at least five times in closing argument. He says that Johnny changed his story two or three times in the recording in his closing argument. Defense counsel is using these statements all throughout cross-examination, all throughout closing arguments. And so we think that the record is sufficient to show that defense counsel wanted these statements and therefore performed adequately and did not prejudice the defendant. If this court has no more questions, we'd ask that this court affirm on the merits. Thank you, Mr. Lewin. Mr. Hildebrand, rebuttal. The state said that if you didn't have the statements in, the defense would have had nothing. How do you respond to that? Well, they would have had nothing but the good evidence that they wanted it. And everything that was bad about this case came in through those statements. I don't really understand why a defense counsel would want prior consistent statements by somebody. Now, the state has said, well, they weren't really consistent. They were totally consistent. You know, the officer is asking Johnny, well, show me how it all happened and he's going through the, you know, this is how the knife went, this is how the arm was, they were all consistent. Why would a trial counsel want to let all these prior consistent statements come in when he knows that that's going to bolster the credibility of Johnny and Matthew when he's trying to break down their credibility? It makes no sense. So you don't believe that those statements were admissible under 801D12C? As substantive evidence? Prior statements by a witness, statements that are not hearsay. Counsel's arguing that all of these were admissible. Oh, they're not admissible. Prior consistent statements are not. And they're not admissible for the exact reasons that they overpersuade a jury to accept that as the truth, even though it's not the truth. They just, if you repeat something, it has an effect on the jury and that's why we keep it out. Why would counsel want to keep putting those in? And why would counsel want all this to come in as substantive evidence? Apparently the state says that's a plan. Really, that would be a plan? That's a mistake. You know, they say, well, you know, the jury, at least the jury opened to convict him on propensity. There was no limitation on the prior bad acts. They could just say, he's a bad person, that's how we're going to convict him. We're going to convict him because we feel that this guy is bad and violent. The only reason why they can come to that conclusion that he's bad and violent, but for the allegations by the jury, is because of those prior, the bad acts evidence that came in. To say that the completeness doctrine would allow this is wrong. The completeness doctrine is just a fairness doctrine. When somebody tries to take something out of context and put it before a jury, it gives the other party the chance to take it out of context. So if you have somebody that says that, a party brings in a statement and the statement says, I never saw the defendant drive through a red light in my life. And that's it. Well, the other party can say, you know, that's not fair. We need to put in the rest of what he said right after that. I have never seen the defendant drive through a red light in my entire life, except for the one he's charged with in this case. Yeah, I saw that really clearly. That's what it's for. So when somebody tries to take something out of context, it's just a fairness doctrine. I don't see how that could apply to any of this stuff, to say that, well, the jury is going to be misled if the defendant's allowed to ask Matthew if he said that Johnny was snoring. How could all this stuff come in because he asked him if he was snoring or not? This doctrine has no place here. That's not what this is about. In fact, you know, the state argued in its brief, the reason why this was not prejudicial to the defendant was because defense counsel did such an outstanding job impeaching Matthew and Johnny. They talk about Matthew saying take a hit out on Renee because the defendant says that to him and defense counsel impeached him going on. You didn't tell the police that. He said, no, I just remembered that two days before the trial. And the state says, look it, I mean, he just showed that that's completely unbelievable. Show him he's lying about that. Then they talk about the impeachment of Johnny because Johnny's saying, oh, yeah, he said, the defendant said he's in the Latin Kings and he's making me make gang signs. And the officer interviewing him goes, oh, really? Show me the gang sign, the Latin King gang sign. And Johnny starts fumbling around. He makes the wrong gang sign. And he says, look it, he showed that he wasn't, he was just, Johnny was just making this up, saying whatever he could to point the finger at him. So he did a great job. Counsel did a great job impeaching Johnny. And then he talks about a great job impeaching Johnny on his claim that the defendant wanted to beat him up because Renee and Matthew told the police there was no conflict. So if counsel did such a great job impeaching these witnesses, how can the state then conclude the evidence was overwhelming when it's too obvious? Star, eyewitnesses were so thoroughly impeached by defense counsel to the point where, I mean, in their brief they say the defendant wasn't prejudiced here by the consistent statements because the admission of the other stuff was used so effectively by counsel to impeach these witnesses that unbalanced then really didn't matter. Well, of course it mattered. This is exactly why we want to keep consistent statements out. There's simply no, there's no reason to allow that in, to bolster the witnesses that he's trying to impeach. You know, and Matthew wasn't just impeached by defense counsel. He was also impeached by witnesses who came in and testified that Matthew told them that he thought that Johnny, that Johnny cut him. Two witnesses said that. And another witness came in and said that Johnny told her, or I mean Matthew told her that Johnny was standing behind him right before it happened. In a trial he was saying, you know, it couldn't have been Johnny, you know, he was sitting in the front, in front of me. So the defendant was the only one. So not only do we have defense counsel showing that these statements that these two witnesses were making were, they were just lying. And then we have witnesses come in and actually say that Matthew was saying that Johnny had actually cut him. This is not a normal run of the mill case. This case was way, totally, totally impossible to look at this case and see how any of the procedures, the rules of procedures were followed. It was like a free-for-all. And because defense counsel did not understand how to properly present a defense and protect his client from all of this inadmissible evidence. And how many times do you get a witness coming in, a victim of a violent crime coming to the sentencing hearing to say, judge you got the wrong person? The defendant is not the person that did this. He got the wrong person convicted. And how often do you get a witness like that Ferguson woman at a post-trial motion, like what happened in this case? She comes in and testifies that after the trial, Renee told her that she was laying down with her throat cut and she looked up and she saw Matthew cutting his own throat. How often do you see that happen in a case? Sometimes when you have really close cases, strange things happen in a case. And that's why I think this can happen. And this is one of those cases. The evidence was very close. Somebody on the jury thought it was close because they were hung with no end in sight. And then you have these characters like Matthew Price, violent, malicious person who by all accounts was holding Renee a prisoner in that relationship. And that was confirmed by the three witnesses. And that's the detective who testified that when he interviewed Renee about that Debbie Davis fight where the defendant tried to calm everybody down, the defendant tried to separate the parties and then Matthew forced the fight by pointing a gun at Renee and forcing her to fight and then holding a knife to the throat of Debbie Davis' son so he wouldn't intervene. That shows that she was a victim of a violent crime. And that's why I think this can happen. And how often do you get a witness like that Ferguson woman at a post-trial motion? She comes in and testifies that after the trial, Renee told her that she was laying down with her throat cut and she looked up and she saw Matthew cutting his own throat. How often do you see that happen in a case? Sometimes when you have really close cases, strange things happen in a case. And that's why I think this can happen. And that's why I think this can happen. And that's why I think this can happen. And that's why I think this can happen. And that's why I think this can happen. And just to call them boyfriend and girlfriend just does not reflect what the evidence shows. It shows that she was afraid of him and that's what Detective West said. And if there's no further questions we'd ask that this court find that this is reviewable and because defense counsel stated on the record that the reason why he did, there's no guessing here, and because there's no possible explanation for doing this but ineffective assistance of counsel, because the evidence was close, we'd ask that this be remanded for a new trial. Thank you. Thank you, Mr. Hildebrand. Case number 120649, People v. Veatch, will be taken under advisement as agenda number three.